

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-15-00082-CV

---

ROBERT WESTERBURG, ADMINISTRATOR OF THE ESTATE OF
R.D. WEST A/K/A RANDY DIXON WESTERBURG, APPELLANT

V.

WESTERN ROYALTY CORPORATION, APPELLEE

---

On Appeal from the 99th District Court
Lubbock County, Texas
Trial Court No. 2014-510,562, Honorable William C. Sowder, Presiding

---

December 11, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Robert Westerburg, as administrator of the estate of his deceased brother, R.D. West a/k/a Randy Dixon Westerburg, and Western Royalty Corporation each appeal a final order of the trial court, rendered pursuant to sections 21.218 and 21.222 of the Texas Business Organizations Code.[1] The order required Western to produce records

---

[1] TEX. BUS. ORGS. CODE Ann. §§ 21.218, 21.222 (West 2012).

for valuation of its shares owned by West, and denied Westerburg's request for statutory attorney's fees. We will affirm.

## Background

West, a resident of California, died on August 22, 2013, and Westerburg was appointed the administrator of the probate estate. At the time of West's death, and for at least the preceding twenty years, he owned 350 shares of Western stock. It appears without dispute that Western is a closely held corporation with fewer than thirty-five shareholders. According to Westerburg, California law requires him as administrator to file an inventory and appraisal of the property administered in his brother's estate. Westerburg retained his law partner, Steven Thornton, to represent him.

In a January 3, 2014 letter, Westerburg stated to Tom Whiteside, president of Western,[2] that the California probate referee had requested the following information regarding West's interest in Western:

1. A brief history of the business and prospects for the future;

2. A description of the role of the decedent in the company;

3. Income and expense statements for three years prior to the date of death;

4. A balance sheet at or near the date of death, August 22, 2013;

5. A complete description of any underlying assets reported on the balance sheet such as real property, stocks or partnership interests, with copies of any appraisals of these assets within five years of the valuation date;

---

[2] Whiteside, an attorney, also represented Western in the trial court and on appeal.

2

6. An estimate of the fair market value of any assets owned by the business;

7. The collectability of any accounts receivable;

8. The dividend history of the company;

9. A list of any stock sales including number of shares, date sold and price/share;

10. Copies of any buy-sell agreements.

Westerburg sent a letter dated January 29, 2014, labeled "Second Request," in which he explained to Whiteside, "the Probate Referee needs the financial information in order to appraise West's interest in Western. Without sufficient information, the Probate Referee cannot make an accurate appraisal."

Whiteside sent a letter dated February 4, 2014, responding as follows to the categories of information listed in Westerburg's January 3 request:

1. We are a corporation with stockholders who receive dividends based on royalties we collect which will continue for the foreseeable future.

2. Decedent was a shareholder.

3. We have no income and expense statements.

4. We have no balance sheet.

5. We own royally interests. There are no appraisals.

6. Unknown.

7. None.

8. You are aware of the dividends that the decedent received.

9. We have repurchased some shares from shareholders, but we don't have a list of the dates sold or price.

10. There are no buy/sell agreements.

By letter to Whiteside dated February 18, 2014, Thornton demanded Western allow examination and copying of an expanded list of documents. The letter asserted Western did not respond to Westerburg's informal requests. The letter made no mention of the information needed for the probate referee's valuation of West's shares. The February 18 letter demanded production of the following:

1. The document(s) reflecting compensation paid to each officer, each director, and/or each shareholder during the period 2001 to the present.

2. The records containing the names and addresses of all past and current shareholders of the corporation and the number and class or series of shares issued by the corporation held by each of them.

3. The records containing the names and last known mailing addresses of shareholders entitled to vote at any shareholders meeting.

4. The minutes of directors and shareholders meetings for the period 2001 to the present.

5. The notices of directors and shareholders meetings for the period 2001 to the present.

6. The tax returns and schedules filed for 2009, 2010, 2011 and 2012, including all Schedules

7. Income Tax Schedules L, M-1, and M-2 that Western Royalty Corp. filed with IRS for the years 2009, 2010, 2011 and 2012.

8. The agreements among one or more shareholders and the corporation restricting the transfer or registration of shares.

9. The voting trust agreements.

10. The shareholders voting agreements.

11. The bank statements and cancelled checks for the period January 1, 2009, to the present.

12.    The cash flow report(s) and/or check register and/or check stubs reflecting the monies received and the expenditures made for the period January 1, 2009, to the present. ·

13.    The documents describing the mineral interest and/or legal description of each mineral interest presently owned by Western Royalty Corp.

14.    The deeds evidencing Western Royalty Corp.'s ownership of mineral or royalty interests.

15.    The documents evidencing ownership, leasehold, or royalty interest in real or personal property owned by Western Royalty Corp.

16.    The Division Orders reflecting mineral interests owned by Western Royalty Corp.

The letter went on to state that should litigation ensue Westerburg would seek costs, expenses, and attorney's fees under Texas Business Organizations Code section 21.222.

Westerburg sued Western the next month, seeking examination and copying of the sixteen categories of documents stated in the February 18 demand letter.[3] The action was based on section 21.218[4] and also sought recovery of costs, expenses, and

---

[3] The suit was brought in the form of a petition for writ of mandamus. *See Uvalde Rock Asphalt Co. v. Loughridge*, 425 S.W.2d 818, 820 (Tex. 1968) ("A method for the enforcement of the right of inspection or examination of the books and records of a corporation is by mandamus").

[4] In part, this section provides a holder of corporate shares may on written demand stating a proper purpose examine and copy the corporation's "relevant books, records of account, minutes, and share transfer records." TEX. BUS. ORGS. CODE ANN. § 21.218(b) (West 2012). *See also* TEX. BUS. ORGS. CODE ANN. § 3.151(a) (West 2012) (entities shall keep books, records of account, minutes of certain proceedings, a current record of the name and mailing address of each owner, and other books as required); § 3.153 (owner may examine books and records maintained under § 3.151).

attorney's fees under section 21.222.[5]  The pleading alleged a reasonable attorney fee in the trial court for enforcing Westerburg's right to inspect and copy Western's corporate records was $10,000.  In its answer, Western defended with, *inter alia,* claims that Westerburg was not suing for a proper purpose and the claim was brought in bad faith and for the purpose of harassment.

Both parties served discovery requests, and by June 2014 both parties sought a hearing regarding the other's discovery responses.  In late June 2014, the court held a hearing concerning the parties' discovery disputes.  Through an e-mail correspondence to the court dated June 25, 2014, Whiteside provided, among other things, a chart listing the percentages of Western's shares owned by each of its shareholders[6] and the dividends paid to each for 2012 and 2013.  Also attached was a copy of Internal

---

[5] This section is entitled "Penalty for Refusal to Permit Examination of Certain Records."  In relevant part it provides:

> A corporation that refuses to allow a person to examine and make copies of account records, minutes, and share transfer records under Section 21.218 is liable to the shareholder for any cost or expense, including attorney's fees, incurred in enforcing the shareholder's rights under Section 21.218. The liability imposed on a corporation under this subsection is in addition to any other damages or remedy afforded to the shareholder by law.

TEX. BUS. ORGS. CODE ANN. § 21.222(a) (West 2012).  It is a defense to an action under section 21.222 that the person suing "was not acting in good faith or for a proper purpose in making the person's request for examination."  TEX. BUS. ORGS. CODE ANN. § 21.222(b)(4).

[6] Shareholders were not identified by name.

6

Revenue Service revenue ruling 59-60, which concerns valuation of stock in closely held corporations for estate and gift tax purposes.[7]

In a July 28, 2014 e-mail to the parties, the court stated among other things, "[t]here seems to be no real reason to question the good faith need for [Westerburg] to have sufficient information to value the stock in question." The court indicated it found the revenue ruling "to be a good, common sense approach to use in this case." The reference was apparently to the factors listed in the ruling's section four. The court added, "The interest in question is small and the initial information requested seems in part excessive and there seems to be some personal dynamics driving this case."[8]

---

[7] The trial court later made reference to the items listed in section four of the revenue ruling, entitled "factors to consider." According to this section:

> It is advisable to emphasize that in the valuation of the stock of closely held corporations or the stock of corporations where market quotations are either lacking or too scarce to be recognized, all available financial data, as well as all relevant factors affecting the fair market value, should be considered. The following factors, although not all-inclusive are fundamental and require careful analysis in each case:
> (a) The nature of the business and the history of the enterprise from its inception.
> (b) The economic outlook in general and the condition and outlook of the specific industry in particular.
> (c) The book value of the stock and the financial condition of the business.
> (d) The earning capacity of the company.
> (e) The dividend-paying capacity.
> (f) Whether or not the enterprise has goodwill or other intangible value.
> (g) Sales of the stock and the size of the block of stock to be valued.
> (h) The market price of stocks of corporations engaged in the same or a similar line of business having their stocks actively traded in a free and open market, either on an exchange or over-the-counter.

[8] The record indicates the Whiteside and Westerburg families have been acquainted for many years, and are long-time shareholders of Western. Western was formed in the mid-1950s. West owned just over 0.46 percent of the company's shares, and received dividends of $154 in 2012 and $231 in 2013.

On August 26, 2014, the trial court signed a document entitled "final judgment." According to a recital, the judgment resulted from the June discovery hearing. The judgment ordered Western to produce the following:

1. Financial documents detailing the book value of the stock;

2. Any financial statements from the last four years;

3. Profit or loss statements from the last four years;

4. Loan applications made by Western from the last four years;

5. Western's federal and state tax returns for the last four years.

Production was also ordered of: "all existing oil and gas leases and corresponding division orders and royalty payments for the last four years[;] a sworn statement that the company has no good will or intangible value; [and] any details of any stock sold, including purchase price and amount of stock, that has occurred in the last seven years." The court further ordered that "based on the totality of the circumstances of the issues in this case, that no attorney fees be awarded to [Westerburg]."

On September 11, 2014, Western responded to the court's order by producing some ninety-six documents, consisting mostly of tax returns and mineral ownership documents. It stated no documents existed responsive to categories 1, 2, 3 and 4, and that no shares were sold during the preceding seven years.

On Westerburg's motion, the court vacated its August 26 judgment and granted a new trial. The parties then filed cross-motions for summary judgment. In his motion, Westerburg sought an order requiring Western to make available for inspection and copying:

8

1. The records evidencing all assets of the corporation including, but not limited to, cash, cash equivalents, Certificate of Deposits, deeds, mineral interest and any other assets.

2. The records containing the names and addresses of all past and current shareholders of the corporation and the number and class or series of shares issued by the corporation held by each of them.

3. The records containing the names and last known mailing addresses of shareholders entitled to vote at any shareholders meeting.

4. The bank statements and cancelled checks for the period January 1, 2009, to the present.

5. The cash flow report(s) and/or check register and/or check stubs reflecting the monies received and the expenditures made for the period January 1, 2009, to the present.

6. The documents describing the mineral interest and/or legal description of each mineral interest presently owned by Western Royalty Corp.

7. The deeds evidencing Western Royalty Corp.'s ownership of mineral or royalty interests.

8. The documents evidencing ownership, leasehold, or royalty interest in real or personal property owned by Western Royalty Corp. including Certificates of Deposit.

9. The Division Orders reflecting mineral interests owned by Western Royalty Corp.

Westerburg sought attorney's fees of $13,487.50 as well as appellate fees, should an appeal follow.

On December 8, 2014, the trial court signed a "final summary judgment" granting "in part" Westerburg's motion and denying "in part" Western's motion. The judgment ordered Western to produce:

9

1. The records containing the names and addresses of all past and current shareholders of the corporation and the number and class or series of shares issued by the corporation held by each of them.

2. The records containing the names and last known mailing addresses of shareholders entitled to vote at any shareholders meeting.

3. The bank statements and cancelled checks for the period January 1, 2009, to the present.

4. The cash flow report(s) and/or check register and/or check stubs reflecting the monies received and the expenditures made for the period January 1, 2009, to the present.

5. The documents describing the mineral interest and/or legal description of each mineral interest presently owned by Western Royalty Corp.

6. The deeds evidencing Western Royalty Corp.'s ownership of mineral or royalty interests.

7. The documents evidencing ownership, leasehold, or royalty interest in real or personal property owned by Western Royalty Corp.

8. The Division Orders reflecting mineral interests owned by Western Royalty Corp.

The order denied Westerburg's request for attorney's fees.

Analysis

Standard of Review

The case is before us in an unusual posture. As noted, some information was provided in connection with the June 2014 discovery hearing, and additional information after the August 26 judgment. And after the trial court granted Westerburg's motion for new trial, the parties presented the case on cross-motions for summary judgment. The

judgment appealed is entitled "Final Summary Judgment." There is no reporter's record. But the issues and argument on appeal are not couched in terms typical of those following a summary judgment. At oral argument, counsel for Westerburg explained the procedure the parties followed in the trial court. He stated that for the sake of saving time and expense the parties agreed to present the case on cross-motions for summary judgment but "waived" the summary judgment standard. Whiteside, at oral argument, noted that procedurally the case is "a bit of a mess."

After review of the record, and considering the issues presented and the parties' representations at oral argument, we find the proper standard of review focuses on sufficiency of the evidence, rather than the *de novo* standard by which summary judgments are reviewed. *See City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005) (evidentiary sufficiency); *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005) (summary judgment).

Westerburg's Issue

In his only issue, Westerburg asserts the trial court erred by denying his request for attorney's fees under section 21.222. On the record before us, we disagree error is shown.

Section 21.222 authorizes recovery of costs or expenses, including attorney's fees, incurred in enforcing a shareholder's rights under section 21.218. A corporation is liable for such costs or expenses if it "refuses" to allow examination and copying of records the shareholder is entitled to examine under section 21.218. Under section 21.222, Westerburg thus had the burden to persuade the fact finder of his entitlement to

recovery of his attorney's fees. Reviewing the conflicting evidence on the issue, we determine whether, in light of the entire record, the trial court's implicit conclusion Westerburg failed to demonstrate his entitlement is so against the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986).

Chapter 21 does not define the word "refuse." In such instances we afford the word its common, ordinary meaning, *City of Rockwall v. Hughes,* 246 S.W.3d 621, 625-26 (Tex. 2008), as stated in a dictionary. *See Epps v. Fowler,* 351 S.W.3d 862, 873 (Tex. 2011) (Hecht, J., dissenting) ("The place to look for the ordinary meaning of words is . . . a dictionary"). When a word has more than one common meaning, we apply the meaning most consistent with its statutory context. *State v. $1,760.00 in U.S. Currency,* 406 S.W.3d 177, 180-81 (Tex. 2013); *see also* TEX. GOV'T CODE Ann. § 311.011(a) (West 2013). According to Black's Law Dictionary, refuse means, "To deny, decline, reject. 'Fail' is distinguishable from 'refuse' in that 'refuse involves an act of the will, while 'fail' may be an act of inevitable necessity." BLACK'S LAW DICTIONARY, 1282 (6th ed. 1990). Among the meanings of "refuse," another dictionary provides, "to show or express unwillingness to do or comply with." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1047 (11th ed. 2003). Fail may be defined as falling short. *Id.* at 449.

Before Westerburg sent his February 18 demand letter pursuant to section 21.218, he sent Western informal requests for information. Whiteside responded with his February 4 letter. Although that letter provided only general information and responded that Western had none of the specific financial statements Westerburg requested, those being income and expense statements, a balance sheet and

12

appraisals of company assets, the trial court was not required to see the letter as a refusal to allow access to such information.

The record contains no evidence of any response from Western to Westerburg's February 18 demand letter. Westerburg's petition, filed March 10, contains the allegations that Western and Whiteside "refused to allow the examination" requested by the demand letter, and that Western "continues to refuse [Westerburg] the exercise of this right." The only evidence supporting the allegation, however, is Westerburg's statement in his affidavit included in the record, which merely repeats the allegation.

The record perhaps demonstrates that Western *failed* to provide information Westerburg believed was necessary to value the shares, but the court's implicit conclusion the record does not demonstrate Western's refusal is not so against the overwhelming weight of the evidence as to be clearly wrong and unjust.

Western's Issue

In its sole issue, Western argues the trial court erred by vacating the August 26 judgment and ordering production of additional documents through the December 8 final judgment because Westerburg was "'not acting in good faith or for a proper purpose in making the person's request for examination' in violation of [section] 21.222(b)(4)." As noted, that section provides a defense to an award of costs, including attorney's fees. Because we have found the trial court did not err by denying Westerburg attorney's fees under section 21.222, consideration of whether Western proved its affirmative defense is unnecessary to disposition of the appeal. TEX. R. APP. P. 47.1.

Moreover, Western concedes the court properly ordered production of the documents listed in its August 26 judgment. As noted, the record demonstrates that Western produced documents in response to that judgment but produced no documents under the categories of "financial document detailing the book value of the stock," "any financial statements from the last four years," "profit or loss statements from the last four years," and "loan applications from the last four years." Western's response merely stated "none" for those four categories. The additional records the court ordered produced in its December 8 judgment, over and above those listed in the August 26 judgment, were pertinent to a determination of the book value of the corporation's shares and the corporation's financial condition. Having acknowledged that it possessed no financial statements or records from which the book value of its stock could be estimated, Western can hardly complain that the court ordered production of banking and shareholder records to substitute for financial documents and statements. For that reason, we overrule Western's appellate issue even though our action is not strictly necessary to disposition of the appeal.

## Conclusion

Having disposed of the parties' issues in the manner described, we affirm the judgment of the trial court.


James T. Campbell
Justice


14